IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ERIC HALL,                                    :
                                              :
        Plaintiff                             :
                                              :   CIVIL NO. 1:CV-09-1016
    vs.                                       :
                                              :   (Judge Caldwell)
EUGENE H. BERDANIER, WARDEN,                  :
*et al.*,                                     :
                                              :
        Defendants                            :


*M E M O R A N D U M*


I.    *Introduction*

        The pro se plaintiff, Eric Hall, an inmate at SCI-Coal Township, filed this

action alleging various federal civil-rights and state-law claims arising from his

confinement at the Schuylkill County Prison.[1]  The complaint presents two major claims,

both stemming from an altercation Plaintiff had with prison personnel on June 4, 2007.

The first one is an Eighth Amendment claim for excessive force, and the second one is a

malicious prosecution claim when Plaintiff was charged with two counts of aggravated

harassment for allegedly spraying urine at a correctional officer and a prison nurse.

---

        [1]  Plaintiff avers he was a pretrial detainee at the Schuylkill County Prison because he had
been transferred there to await trial on a separate incident that occurred at another state
correctional institution.  (Compl. ¶¶ 5 and 12).  However, Plaintiff  also avers that he was transferred
from his "parent institution," SCI-Coal Township.  We take this to mean that Plaintiff was already
serving a sentence when he was transferred to Schuylkill County so that he remained a convicted
inmate, even though he had been transferred for trial.  *See Laza v. Reish*, 84 F.3d 578, 580 (2d Cir.
1996).

We are considering two motions. The first one, a motion to dismiss, or in the alternative for summary judgment, was filed by the eleven "Schuylkill County Prison Defendants": Eugene H. Berdanier, the prison warden; David J. Wapinsky, the deputy warden; Richard Emerick, a lieutenant; John Wowak, a corrections officer; Frank Rompalo, a corrections officer; Brian Gotshall, a corrections officer; Michael Buchanan, a corrections officer; Officer Charles Foster; Harold Poleman, a corrections officer; Rebecca Bergan, a corrections officer; and Farrone, a corrections officer. The second motion is a motion to dismiss filed by defendant, Grant F. Yoder, a City of Pottsville police officer.[2]

In their motion, the Schuylkill County Prison Defendants make the following arguments. First, the statute of limitations bars any claim for the defendants' conduct occurring more than two years before May 29, 2009. Second, the complaint should be dismissed because Plaintiff failed to exhaust the administrative remedies under the prison's inmate grievance policy. Third, the suit should be dismissed as to defendants Emerick, Gotshall, Buchanan, Foster, Poleman, Bergan, and Farrone because they are named only in the assault claim, but they are not alleged to have had any personal involvement in the alleged assault. Fourth, the pendant state-law claims should be dismissed because the court should not exercise supplemental jurisdiction over those claims when all the federal claims have been dismissed.

---

[2] The other defendant in the case is Gina Marie Galle, a licensed practical nurse employed by PrimeCare Medical, Inc.

II.      *Standards of Review*

On a motion for summary judgment, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as

-3-

true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

Additionally, "'however inartfully pleaded,' the 'allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers.'" *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003)(quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, 654 (1972)) (brackets in *Mitchell*).

III.    *Discussion*

      A.    *The Motion of the Schuylkill County*
         *Prison Defendants*

         1.    *The Limitations Defense*

The Schuylkill County Prison Defendants argue that the statute of limitations bars any claim for conduct on their part that occurred before May 29, 2009, the date the complaint was filed. The defendants specifically refer to paragraphs 12 through 19 of the complaint.

The statute of limitations for filing a section 1983 action is two years. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). This is an affirmative defense, but when it appears on the face of the complaint, a defendant may raise it by a motion to dismiss. *See Benak ex rel. Alliance Premium Growth Fund v. Alliance Capital Mgmt., L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006).

-4-

The complaint does contain allegations concerning conduct by defendant

Rompalo that may have occurred on or about May 25, 2009. However, we will not

dismiss any claims based on a limitations defense at this stage. Plaintiff asserts that the

actionable conduct is alleged to have taken place within the limitations period, but we

need not accept that argument at this time. As we review the complaint, the allegations

are not precise enough to say at the motion-to-dismiss stage whether any claim should be

time-barred. Hence we reject the limitations defense based on Plaintiff's pleading.

### 2. *Exhaustion of Administrative Remedies*

The Schuylkill County Prison Defendants argue that they are entitled to

judgment because Plaintiff failed to file a timely grievance about the June 4, 2007,

incident. They have submitted a copy of the Inmate Grievance Policy, which requires an

inmate to file a grievance within thirty days after a potential grievable event has occurred.

(Doc. 18-2, CM/ECF p. 4).[3] Defendant Wapinsky has affirmed that the Policy has been

posted in all cell blocks. (Doc. 18, CM/ECF p. 1 ¶ 4).[4] On March 10, 2008, Plaintiff did file

a grievance concerning the events of June 4, 2007, but the grievance was rejected as

being untimely.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust his "available"

administrative remedies before he can file suit under federal law. Section 1997e(a)

---

[3] Citations are to the page numbers assigned by the CM/ECF system.

[4] Because the defendants rely on matters outside the complaint, we treat this aspect of their motion as one for summary judgment.

requires "proper" exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme Court held that a prisoner did not properly exhaust when he failed to file a grievance by the deadline required by the grievance system and hence his case was properly dismissed. *Id.* at 87, 126 S.Ct. at 2383-84. The Schuylkill County Prison Defendants argue that Plaintiff's case should also be dismissed as he failed to properly exhaust his administrative remedies by not filing a timely grievance.

We reject this argument. The Inmate Grievance Policy does require inmates to file a grievance within thirty days after a potential grievable event has occurred. However, Plaintiff has filed a copy of the Inmate Handbook. The Handbook mentions the grievance process, but does not specify a deadline for filing a grievance. (Doc. 8, CM/ECF p. 21). Plaintiff avers in his complaint that he reviewed the Handbook for any filing deadlines and found none. Further, contrary to the defendants' position, the Policy was not posted in the restricted housing unit, where he was being confined. (Compl. ¶¶ 13-14). Based on these averments, which are verified, Plaintiff argues that the defendants cannot rely on his failure to exhaust because the grievance procedure was not "available" to him as required by section 1997e(a). He cites in support *Goebert v. Lee County*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)(a pretrial detainee met the exhaustion requirement despite not having filed an administrative appeal because the administrative appeal process was not "available" to her when the process, contained in "The General Operating Procedures" of the jail, was not distributed to inmates).

We agree with Plaintiff that the defendants are not entitled to summary judgment on the basis of his failure to exhaust administrative remedies. There are genuine issues of material fact concerning whether the Policy was available to him. *See In re Bayside Prison Litigation*, 351 F. App'x 679, 683 (3d Cir. 2009)(nonprecedential)(if a remedy is not reasonably communicated to an inmate, it may be unavailable for the purpose of section 1997e(a) exhaustion)(citing in part *Goebert, supra*).[5]

3. *Lack of Personal Involvement by Some of the Defendants in the Excessive Force Claim*

The Schuylkill County Prison Defendants argue that Plaintiff's excessive force claim should be dismissed as to defendants Emerick, Gotshall, Buchanan, Foster, Poleman, Bergan, and Farrone on the ground that Plaintiff has failed to allege their personal involvement in that claim.

For the purpose of the motion, we must accept Plaintiff's allegations, which are as follows. On June 4, 2007, defendant Wowak called for an "all guard response" to Plaintiff's cell. (Compl. ¶ 33). Foster arrived first, then Gotshall, Rompalo, Buchanan, Poleman, Bergan and Farrone. (*Id.* ¶34). Wowak told Plaintiff to lie on the floor, and Plaintiff complied. (*Id.* ¶¶ 35-36). Wowak entered the cell and was followed by Buchanan, Foster, Gotshall and Rompalo. (*Id.* ¶ 37). Wowak assaulted Plaintiff while Plaintiff was handcuffed in his cell. (*Id.* ¶ 39). Defendants Bergan, Poleman, and Farrone

---

[5] Based on this conclusion, we need not consider Plaintiff's alternative argument that he complied with the Inmate Grievance Procedure because he could not file a grievance until after the state's case against him was completed.

made no attempt to stop Wowak and moved out of his way so he could get better access to Plaintiff's head and face. (*Id.* ¶ 41). At two points, Gotshall dragged Plaintiff back into the cell so Wowak could resume the assault. (*Id.* ¶¶ 43 and 50). Buchanan, Poleman, Bergan and Farrone were spectators. (*Id.* ¶ 45). Rompalo used a pepper-spray equivalent on Plaintiff. (*Id.* ¶ 46). At one point, defendant Foster yelled at another prisoner to "lock into his cell" because he believed the prisoner was watching the assault. (*Id.* ¶ 44). Defendant Emerick approached the cell and told Wowak, Rompalo, and Buchanan "cease their actions" so they could prepare their reports. (*Id.* ¶ 51).

Taking the facts in the light most favorable to Plaintiff, we find that Plaintiff has sufficiently pled a cause of action against defendants Emerick, Gotshall, Buchanan, Foster, Poleman, Bergan, and Farrone. If these defendants witnessed the alleged assault and failed to intervene when they could have, they had sufficient personal involvement. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). We will therefore deny the motion to dismiss these defendants.[6]

B.     *The Yoder Motion to Dismiss*

Defendant, Grant F. Yoder, a police officer for the City of Pottsville, was called to the prison that night and investigated the charge that Plaintiff had sprayed Wowak and Galle with urine. Yoder obtained an arrest warrant from a Pennsylvania magisterial district judge and charged Plaintiff on June 6, 2007, with two counts of

---

[6] The defendants also moved to dismiss Plaintiff's state-law claims, on the premise that the federal claims would not survive their motion. Since the federal claims will proceed, the state-law claims will too.

aggravated harassment by a prisoner under 18 Pa. Con. St. Ann. § 2703.1.[7]  On March

10, 2008, a jury acquitted Plaintiff of those charges.  (Compl. ¶¶ 103-04).

Plaintiff makes the following claims against Yoder: (1) a defamation claim

based on a newspaper article that reported on Plaintiff's December 13, 2007, state

habeas proceedings on the harassment charges where the article "painted the plaintiff as

a confrontational, irate, urine squirting, irrational convict" (Compl. ¶¶ 91 and 124), based

in part on Yoder's testimony, (*id.* ¶ 92); (2) a federal malicious prosecution claim alleging

that Yoder knew there was no probable cause to file the charges but did so anyway on the

basis of false evidence (*id.* ¶ 122); (3) a section 1983 conspiracy claim, alleging that

Yoder conspired with Wowak and Galle to maliciously prosecute Plaintiff (*id.* ¶ 121); (4) a

state-law claim for false arrest (*id.* ¶ 123); (5) a state-law claim for false imprisonment

(*id.*); and (6) a state-law claim for abuse of process (*id.*).

Yoder moves to dismiss all these claims.  He begins with the defamation

claim, asserting that it is barred by the one-year statute of limitations for a defamation

action, 42 Pa. Con. St. Ann. § 5523(1), because it is based on testimony Yoder gave at a

December 13, 2007, state habeas corpus proceeding that was reported in a newspaper

article on or about that date.  Since this lawsuit was filed on May 29, 2009, Plaintiff is well

---

[7]  In relevant part, section 2703.1 makes it a felony of the third degree for a person confined in a state, local or county prison to "intentionally or knowingly cause[ ] another to come into contact with . . . urine . . . by throwing, tossing, spitting or expelling such fluid or material."

past the filing deadline for a defamation action.  Plaintiff does not oppose this argument, and we accept it.  We will therefore dismiss the defamation claim.[8]

Yoder moves to dismiss the federal malicious prosecution claim and the state-law claims for false arrest and false imprisonment by arguing that Plaintiff's own allegations show there was probable cause to charge Plaintiff with the counts of aggravated harassment by a prisoner.  Since a lack of probable cause is an essential element of all three of these claims, they must be dismissed.  In opposition, Plaintiff maintains that the allegations do show a lack of probable cause.

The pertinent allegations are as follows.  On the evening of June 4, 2007, accompanied by defendant Wowak, defendant Galle was distributing medication to the prisoners in the restricted housing unit at around 7:50 p.m.  (Compl. ¶ 23).  Plaintiff was supposed to receive two inhalers and some pills for asthma.  (*Id.* ¶ 25).  Galle became "irate," apparently because she thought Plaintiff was taking too long, and threw the inhalers on the floor outside the cell and beyond Plaintiff's reach.  (*Id.* ¶ 26).  When Plaintiff said he could not reach the inhalers, Wowak kicked them into the cell.  (*Id.* ¶¶ 27 and 28).  Plaintiff kicked them back out.  (*Id.* ¶ 29).

As Galle picked the inhalers up, Plaintiff, with a Styrofoam cup of water in his hand, asked for his pills.  (*Id.* ¶ 30).  Galle said she did not like his "attitude" and

---

[8]  Yoder also argues the claim fails because Plaintiff does not allege Yoder published the story about him.  We agree with this argument as well (which Plaintiff has also not opposed).  *See Connor v. Archdiocese of Philadelphia*, 601 Pa. 577, 609-10, 975 A.2d 1084, 1104 (2009)(the plaintiff has to prove as one element of a defamation claim that the defendant published the defamatory statement).

-10-

moved on to the next cell. (*Id.* ¶ 31). "Plaintiff's frustration overcame him," and he threw the cup of water against his cell door. The cup cracked and a small amount of water splashed outside the left side of the cell door and from beneath the cell door. (*Id.* ¶ 32). Wowak then called for the "all guard response" that led to the alleged use of excessive force described above.

The prison contacted the Pottsville police. Yoder arrived at the prison around 8:13 p.m., and defendant Emerick told him that Plaintiff had assaulted Wowak and Galle with urine propelled from a shampoo bottle. (*Id.* ¶¶ 68-69). Wowak and Galle also told Yoder that Plaintiff "squirted urine from the side of the cell door . . . directly from a shampoo bottle which struck defendant Wowak on the shoulder . . . and defendant Galle in the neck." (*Id.* ¶ 70). Additionally, Yoder said that he "smelled the strong stench of urine" on both Wowak and Galle. (*Id.* ¶ 71).

Yoder failed to do the following. First, he failed to take the alleged victims' clothing to test it for urine or any other substance. (*Id.* ¶ 71). Second, he "failed to swab the alleged crime scene" for evidence of urine, even though he had gotten to the restricted housing unit within about forty-eight minutes after the alleged incident. (*Id.* ¶ 72). Third, he did not attempt to find the shampoo bottle that was allegedly used to squirt the urine. (*Id.* ¶ 73). Additionally, Yoder did not talk to Plaintiff about the incident. (*Id.* ¶¶ 74 and 75).

In arguing the complaint shows probable cause, Yoder focuses on the allegations that defendant Emerick told him that Plaintiff had assaulted Wowak and Galle with urine propelled from a shampoo bottle, that Wowak and Galle also told Yoder directly

that Plaintiff had squirted them with urine, and that Yoder himself had "smelled the strong stench of urine" on both Wowak and Galle.  Yoder argues that these allegations are sufficient to establish probable cause and that any alleged failure to investigate is irrelevant.  Further, Plaintiff's allegations that Yoder filed the charges knowing they were false or that Yoder testified falsely at Plaintiff's trial are unsupported conclusions and should be disregarded.

Lack of probable cause is an essential element of a federal malicious prosecution claim.  *See Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)(setting forth the elements of the claim).  It is also an essential element of state-law claims for false arrest and false imprisonment.  *Mills v. City of Harrisburg*, 350 F. App'x 770, 774 (3d Cir. 2009)(nonprecedential).  Hence, if there was probable cause for Yoder to arrest Plaintiff, it would be dispositive of these three claims.    "Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested."  *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007).  Probable cause is determined by the facts and circumstances within the officer's knowledge at the time of the arrest.  *Id.*  Applying this test here, we conclude Yoder had probable cause to file the two counts of harassment by a prisoner against Plaintiff for the simple reason that both complaining witnesses told him Plaintiff had sprayed them with urine.

In opposition, Plaintiff relies on his allegations concerning certain actions Yoder did not take, and from these argues there was no probable cause for the following

reasons.  Plaintiff contends Yoder should have tested Wowak's and Galle's clothing for urine and swabbed the area around his cell to see if the liquid on the floor was urine. Plaintiff characterizes these omissions as Yoder's purposeful avoidance of plainly exculpatory evidence, and argues these two things should have been done because otherwise probable cause is based solely on Wowak's and Galle's credibility.  He cites in support *Kerman v. City of New York,* 261 F.3d 229, 241 (2d Cir. 2001)("An officer contemplating an arrest is not free to disregard plainly exculpatory evidence")(cited case omitted).

      We reject this argument.  Plaintiff is not referring to exculpatory evidence but to testing he thinks should have been done to reveal what might have been exculpatory evidence.  In deciding whether there is probable cause, a police officer does not have to "investigate every lead."  *Capodici v. City of Jersey City*, No. 03-2306, 2005 WL 2452698, at * 6 (D.N.J. Sept. 30, 2005)(citing *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001)); *see also Domenech v. City of Philadelphia*, No. 06-1325, 2009 WL 1109316, at *11 (E.D. Pa. April 23, 2009).

      Plaintiff complains that the testing should have been done because otherwise Yoder only had the credibility of Wowak and Galle to support probable cause. However, the investigating officer can rely on information supplied by a complaining witness, as long as the officer does not know about "substantial evidence of the witness's own unreliability."  *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000).  Plaintiff alleges no facts implying that Wowak and Galle were unreliable, or if they were, that Yoder should have known it; he only makes an unsupported assertion that their statements were false.

-13-

Plaintiff also argues there was no probable cause because Yoder knowingly used Wowak's and Galle's false statements, along with his own false statement that he smelled urine on these witnesses, to secure the arrest warrant. Further, he argus that Yoder's failure to ask questions, specifically, about where the shampoo bottle was, was intentional, so that he could create the impression that probable cause was valid. We reject these arguments because Plaintiff alleges no facts in support of them. Additionally, as noted above, Yoder did not have to investigate every lead.[9]

Further, in regard to Plaintiff's assertion that Wowak and Galle lied, we recognize that Plaintiff was acquitted of the charges, but "the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction," and "the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

We could allow amendment of these claims, but Plaintiff has already fully argued why he believes there was a lack of probable cause so amendment would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).[10] We will therefore dismiss

---

[9] The significance of the missing shampoo bottle is that, as alleged by Plaintiff, he was permitted to introduce at trial a video of a test showing that a shampoo bottle of the size described by Wowak could not be flushed down his prison toilet, as Wowak had testified Plaintiff did on the night of the incident. (Compl. ¶¶ 87, 98-100).

[10] In this regard, we have taken into account Plaintiff's affidavit (doc. 37) filed in support of his opposition brief.

the federal malicious prosecution claim and the state-law claims for false arrest and false imprisonment.

Yoder next moves to dismiss the state-law claim for abuse of process. He argues that this cause of action requires that the process be used "primarily to accomplish a purpose for which it is not designed," *Cruz v. Princeton Ins. Co.*, 972 A.2d 14, 15 n.1 (Pa. Super. 2009), and here there is no indication that "Plaintiff was arrested for any other reason other than to bring him to justice." (Doc. 29, Yoder's Br. in Supp. at p. 9). In opposition, Plaintiff says he was not arrested to bring him to justice and that Yoder's conduct, as alleged by Plaintiff, in employing false evidence to obtain an arrest warrant to falsely prosecute Plaintiff was a use of criminal procedures for a purpose "they were not designed to achieve." (Doc. 36, Pl.'s Opp'n Br. at p. 10). Plaintiff maintains Yoder had "illegal and ulterior purposes." *Id.*

We will dismiss the abuse-of-process claim. Although there may be other reasons why the claim is deficient, we can rely on the reason essentially advanced by defendant Yoder. The process has to have been used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Cruz*, *supra*, 972 A.2d at 15 n.1. Here, Yoder obtained a result that is the legitimate object of the process, an arrest warrant and prosecution. Any assertion that he had a bad motive in doing so is irrelevant. *See Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008)("'there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions'")(quoted case omitted).

Defendant next moves to dismiss the section 1983 conspiracy claim. That claim charges him with "act[ing] in concert and "conspir[ing]" to make an unlawful arrest and a malicious prosecution. (Compl. ¶ 121). In part, Yoder argues Plaintiff has failed to allege facts to support his claim of concerted action, relying instead on bald assertions. In opposition, Plaintiff contends he can rely on his allegations set forth above concerning Yoder's alleged role in using Wowak's and Galle's allegedly false statements, and his own false testimony, to bring about Plaintiff's arrest and prosecution, as well as his supposed failure to obtain exculpatory evidence. He also points out that conspiracy often has to be proved by circumstantial evidence.

In part, to assert a conspiracy claim under section 1983 a plaintiff must establish the elements of a civil conspiracy. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974) (relying on Pennsylvania civil conspiracy law to set forth the elements). "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Adams v. Teamsters Local 115*, 214 F. App'x 167, 172 (3d Cir. 2007)(nonprecedential)(quoting in part *Hampton v. Hanrahan*, 600 F.2d 600, 620-21 (7th Cir. 1979))(quoted case and internal quotation marks omitted). As Plaintiff asserts, the "agreement can be shown by . . . circumstantial evidence." *Id.*; *see also Marulli v. Alloy*, Nos. 04-2869 and 04-2874, 2006 WL 2772553, at *8 (D.N.J. Sept. 23, 2006).

-16-

We agree with defendant Yoder that Plaintiff has failed to allege a conspiracy claim against him. Plaintiff alleges that Yoder "acted in concert and conspired with" (Compl. ¶ 121), defendants Wowak and Galle. This type of conclusional language is not enough. *Twombly, supra,* 550 U.S. at 555, 127 S.Ct. at 1964-65. *See also Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184-85 (3d Cir. 2009)(per curiam)(the requirement of making factual allegations extends to averments of conspiracy). The claim is not saved by the other allegations, which merely indicate Yoder was investigating the case.

We could allow amendment of this claim, but Plaintiff has already fully argued why he believes the claim is sufficient, so amendment would be futile. *See Alston, supra,* 363 F.3d at 235. We will therefore dismiss the section 1983 conspiracy claim against Yoder without leave to amend.

We will issue an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: June 1, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ERIC HALL,                                    :
                                              :
              Plaintiff                       :
                                              : CIVIL NO. 1:CV-09-1016
     vs.                                      :
                                              : (Judge Caldwell)
EUGENE H. BERDANIER, WARDEN,                  :
*et al.*,                                     :
                                              :
              Defendants                      :


                          *O R D E R*


     AND NOW, this 1st day of June, 2010, it is ordered that:

     1.   The motion (doc. 17) of the Schuylkill County Prison
Defendants to dismiss, or in the alternative for summary
judgment, is denied.

     2.   The motion (doc. 28) to dismiss filed by defendant,
Grant F. Yoder, is granted, and all claims against him are
dismissed.


                                   /s/William W. Caldwell
                                   William W. Caldwell
                                   United States District Judge